UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:21-CR-015-CCB
No. 3:25-CV-956-CCB

SHAMOND JENKINS

## OPINION AND ORDER

Before the Court is Shamond Jenkins's ("Mr. Jenkins") Motion to Vacate under 28 U.S.C. § 2255 (ECF 142). Mr. Jenkins asks the Court to vacate his conviction for robbery and seeks release, a new trial, or an evidentiary hearing to adjudicate his claim on its merits. Mr. Jenkins argues that he was deprived of the effective assistance of his pre-trial and trial counsel in violation of his Sixth Amendment rights. Specifically, he alleges that his pre-trial and trial counsel failed to do three things: (1) move for a Franks hearing to suppress the search warrant affidavit, (2) challenge the validity of evidence obtained during the traffic stop, and (3) cross-examine and subpoena Officer Martinsky at trial. The Court finds that all these arguments lack merit.

### BACKGROUND

**A. Initial Arrest**

On December 17, 2020, a lone individual entered a Check Into Cash store in Mishawaka, brandished a gray over black semi-automatic handgun, and told the store employee he would kill her if she didn't hand over the cash from the store's safe. (ECF 33

at 1-2). The employee handed the money over and the robber fled. Store surveillance video captured the robbery. (*Id*. at 2).

On December 29, 2020, authorities learned of another robbery, this time at the Centier Bank located in the South Bend Meijer grocery store. (*Id*.). The teller followed the robber's directions, and the robber fled with cash in a gray Walmart bag. Bank surveillance again captured the robbery. (*Id*.). FBI Special Agent Weber ("Agent Weber") reviewed that video and noticed that this robber appeared to be the same young male from the earlier robbery. (*Id*.) Agent Weber later testified that he spoke with South Bend Detective Martinsky ("Officer Martinsky") shortly thereafter. (ECF 142-3 at 54). During this conversation, Officer Martinsky stated that he had "dealt with Mr. Jenkins in the past with some other armed robberies that he was charged with and [remembered] him having a tattoo on his neck." (*Id*.).

A third robbery then occurred on January 7, 2021. (ECF 33 at 2). This robbery involved two males who entered a Centier Bank in Mishawaka, demanded money from the employees, and threatened to kill the employees if they did not comply. (*Id*.). One of the robbers gave the bank employee a gray Walmart bag to fill with money, the employee complied, and the two robbers fled. (*Id*.).

Agent Weber's investigation into Mr. Jenkins showed that local authorities knew him from an armed robbery that occurred in May 2019, that he was a physical match with the individual seen in all three robbery surveillance videos, and that he had a prominent tattoo. (*Id*. at 3). Also, he found photos and video of Mr. Jenkins online that showed him

wearing the distinctive red and white pants seen in the video of the first robbery and a black puffy coat that matched the one seen in the robberies. (*Id.*).

Having identified a likely suspect, Agent Weber and other authorities compiled an application for a search warrant on January 8, 2021, of Mr. Jenkins's girlfriend's apartment in the Castle Point apartment complex where Mr. Jenkins was known to stay. (*Id.*). At the same time certain investigators and officers were compiling and applying for the search warrant that day, others, including Indiana state troopers, FBI agents, and local police officers, were surveilling the apartment complex in anticipation of receiving the warrant. (*Id.*). FBI agents had briefed the law enforcement team doing the surveillance about Mr. Jenkins's suspected robberies and the fact they were applying for a search warrant. (*Id.*). Some of the law enforcement officers were located directly in and around the apartment complex while others were positioned farther away to form a wider perimeter. (*Id.*).

While conducting the surveillance, the officers closer to the apartment saw Mr. Jenkins and his girlfriend, Camyla Walton ("Ms. Walton"), walk out of the apartment complex and enter a gray Ford sedan being driven by a third person. (*Id.*). After seeing Mr. Jenkins and Ms. Walton get into the car of Ms. Greer, the nearby officers radioed to the officers positioned on the wider perimeter to inform them that Mr. Jenkins was riding in the gray Ford westbound on Cleveland Road away from the apartment complex. (*Id.* at 4).

State Trooper Kyle Glaze ("Trooper Glaze"), who had been briefed on Mr. Jenkins's suspected crimes and had seen pictures of him, was one of the waiting officers

who heard the radioed message. (*Id.*). He began driving on Cleveland Road west of the apartment complex to try to locate the gray Ford. (*Id.*). He located a car stopped at the intersection of Cleveland and Juniper Roads that matched the description he had heard and that had an individual sitting in the front passenger seat who appeared to match Mr. Jenkins's physical description. (*Id.*). As Trooper Glaze pulled up behind the car, he stated he saw the car move lanes without using a turn signal, take a left turn without using a turn signal, and travel 42 miles an hour in the 30 mile-per-hour zone. (*Id.*).

After witnessing the third traffic violation, Trooper Glaze activated his lights and pulled the car over. (*Id.*). Troopers Hudson and Caswell, along with at least one other officer, also pulled over to assist with the stop. (*Id.*). Trooper Caswell used his trained police dog to perform a sniff around the car. (*Id.* at 5) The dog alerted for drugs at the front passenger door. (*Id.*). Ms. Greer consented to the search as well (*Id.*). While conducting the search, troopers found that Ms. Walton had a wad of approximately $5,300 in cash, including a $20 bill that matched one of the bait bills from the South Bend Centier Bank robbery. (*Id.*) Mr. Jenkins had about $100 in cash, none of it in bait bills. (*Id.*) Mr. Jenkins was, however, wearing the same type of red-and-white Air Jordan sneakers that the South Bend Centier Bank robber wore. (*Id.*).

Mr. Jenkins was arrested, and on January 11, 2021, charged with robbing the Check Into Cash store, brandishing a gun during that robbery, robbing the South Bend Centier Bank, and robbing the Mishawaka Centier Bank. (*Id.*).

### B.  Motion to Suppress and Evidentiary Hearing

On April 4, 2021, Mr. Jenkins's pre-trial counsel, Mr. Schmid, submitted a Motion to Suppress Evidence because of an illegal traffic stop. (ECF 24). On July 21, 2021, the Court conducted an evidentiary hearing concerning the motion to suppress submitted by Mr. Schmid. (ECF 29). There, Agent Weber testified about Officer Martinsky's statement of identification that was included in the search warrant affidavit. (ECF 142 at 56). The Court denied the motion to suppress, finding that the traffic stop was lawful and reasonable because Trooper Glaze "was aware of specific and articulable facts." (ECF 33 at 11).

### C.  Communication with Trial Counsel

On September 22, 2021, Mr. Schmid submitted a motion to withdraw as Mr. Jenkins attorney. (ECF 40). On September 30, 2021, the Court appointed Mr. Wemhoff to represent Mr. Jenkins. (ECF 44). Mr. Jenkins alleges that he communicated with Mr. Wemhoff that he wished to file for a Franks hearing to challenge the evidence from the traffic stop and the validity of the search warrant.[1] (ECF 142 at 21). Mr. Jenkins alleges that Mr. Wemhoff replied, "a Franks hearing is a waste of time and is very hard to overcome." (*Id*. at 22). Additionally, Mr. Jenkins asserts that Mr. Wemhoff "advised [him]

---

[1] "A Franks hearing affords a defendant the opportunity to show, by a preponderance of the evidence, that a warrant affidavit contains perjury or a reckless disregard for the truth. If the defendant meets that burden, the court sets aside that "false material" contained in the warrant affidavit, and if probable cause cannot be established from the valid and truthful portion of the affidavit, the entire search warrant is deemed to be invalid and the ensuing search is void." *See United States v. McDonald*, 723 F.2d 1288, 1288 n.1 (7th Cir. 1983).

that he would not subpoena or cross-examine Martinsky at trial because if he bring[s] up Defendant['s] criminal record it would make him look bad." (*Id.*).

### D.  Sentencing

 Mr. Jenkins was convicted of count 3, robbery of Centier Bank on December 29, 2020, and sentenced to 100 months in federal prison.  (ECF 142 at 17).

### E.  First Appeal

Mr. Jenkins appealed his conviction to the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"). (ECF 137-1). He alleged (1) the district court rendered the witnesses' in-court identifications unduly suggestive by requiring Jenkins to wear a face mask, (2) the face mask prevented him from confronting the witnesses against him, and (3) there was insufficient evidence to convict him. (*Id.* at 5). On February 14, 2025, the Seventh Circuit affirmed the District Court's conviction of Mr. Jenkins, denying his appeal. (ECF 137-2).

STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner may seek release from the Court in which he was convicted on the grounds that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The statute requires that this Court grant a prompt hearing on Mr. Jenkins's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Relief under § 2255 is only available "in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States,*

6

13 F. 4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)).

A defendant is eligible to submit a motion under §2255 if procedural thresholds are satisfied. 28 U.S.C. § 2255. Specifically, the defendant must be challenging their sentence on applicable grounds in sentencing court, in custody at the time of the motion, and file the motion within the statute of limitations. *See Clay v. United States*, 537 U.S. 522, 524 (2003) ("a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Mr. Jenkins is currently in federal custody serving his 100-month sentence, challenging his sentence on constitutional grounds, and properly submitted the Motion to this Court, the sentencing Court. (ECF 142); *see Clay*, 537 U.S. at 525. The judgment was deemed final on May 15, 2025, ninety days after a petition for certiorari to the Supreme Court can be filed, and the starting point for the one-year statute of limitations. *See Clay*, 537 U.S. at 525. Mr. Jenkins submitted this Motion to the Court on November 14, 2025, thereby satisfying the procedural threshold for § 2255. *See id.*

The Sixth Amendment grants every criminal defendant the right to "effective" assistance of counsel in their defense. *Buck v. Davis*, 580 U.S. 100, 118 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). However, "effective" assistance includes a "wide range" of performance. *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024). To be considered ineffective, a party's attorney must have displayed conduct that "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. In

7

successfully showing ineffective assistance of counsel, a party must show two things: (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) "that the deficiencies in counsel's performance were prejudicial to the defense." *Id.* at 687, 692. These two prongs of *Strickland* are often referred to as the "performance" and "prejudice" prongs. *See, e.g.*, *United States v. Brooks*, 2024 WL 4625507, at *4 (N.D. Ind. Oct. 30, 2024). A party's inability to satisfy either prong is fatal to their claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

Before legal assistance can be considered ineffective, there must be a substantial showing as required by *Strickland*. Courts will "strongly presume[]" that counsel's assistance was reasonable. *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690). To successfully show otherwise, a party must overcome the presumption that the challenged conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Additionally, the party must satisfy the prejudice prong. Counsel's disregard for the norms of the legal profession must have been so fatal that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee v. Galloway*, 106 F.4th 668, 673 (7th Cir. 2024).

**ANALYSIS**

### A.    **Franks Hearing**

Mr. Jenkins is proceeding pro se. Thus, the Court will construe his motion "liberally." *Ebmeyer v. Brock*, 11 F.4th 537, 542 n.4 (7th Cir. 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Mr. Jenkins first argues that his counsel was ineffective because they did not "file for a Frank's hearing" to dispute a search warrant affidavit.

8

(ECF 142 at 22). However, a Franks hearing is proper when false information is included in a search warrant affidavit to obtain probable cause. *See United States v. Mullins*, 803 F.3d 858, 859 (7th Cir. 2015). The FBI created a search warrant to search and retrieve evidence from Ms. Walton's residence, not from the vehicle where Mr. Jenkins was apprehended from. (ECF 142 at 23). Because the evidence Mr. Jenkins continuously disputes arises from the traffic stop and not Ms. Walton's residence, a search warrant is irrelevant. (*Id*. at 22-24). Accordingly, a Franks hearing would be an improper request. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (holding that a Franks hearing is appropriate when the alleged false statement was necessary to find probable cause). Therefore, the Court finds that "sound trial strategy" was exercised by counsel. *Strickland*, 466 U.S. at 689.

### B. Traffic Stop Evidence

Second, Mr. Jenkins argues that but for Officer Martinsky's alleged false statement, the FBI would not have identified him as a suspect and there would have been no probable cause to initiate the traffic stop that secured key evidence for trial. (ECF 142 at 24).[2] He asserts that Officer Martinsky's statement is mere speculation because it was allegedly made after reviewing footage of the second robbery where the suspect was masked. (*Id.*). Mr. Jenkins provides his criminal history record, arguing that it contradicts Officer Martinsky's alleged statement that he committed an armed robbery in May 2019.

---

[2] Mr. Jenkins also alleges that Mr. Wemhoff failed to challenge "misleading omissions" such as the Walmart receipt and Jacksonville Jaguar hat, which he contends proves his innocence. (ECF 142 at 25). However, this evidence was not the basis for how Mr. Jenkins was identified and is thus irrelevant to the search warrant. *See United States v. Thomas*, 763 F.3d 689, 694 (7th Cir. 2014) (holding that if the evidence is "sufficient to permit jurors to find beyond a reasonable doubt" that the defendant is the alleged criminal, a conviction will not be overturned based on the government's failure to prove identity).

(*Id.*). In support of his argument, he cites *United States v. Wong Sun* (*Wong Sun v. United States*) arguing that the poisonous tree doctrine applies here because the statement is the poisonous tree and the "poisonous fruits are evidence obtained from it." 371 U.S. 471 (1963); (*Id.* at 24).

First, the Court already rejected a similar argument in the Motion to Suppress made by Mr. Schmid. In his motion to suppress evidence collected from the traffic stop, Mr. Jenkins argued the "investigatory stop was warrantless, not supported by probable cause, and thus illegal." (ECF 33 at 5). The Court decided in its Order that the Indiana state troopers obtained probable cause to initiate the traffic stop because (1) the totality of circumstances "show there was reasonable suspicion" to stop the vehicle and, (2) the driver of the vehicle was observed committing traffic violations. (*Id.* at 5-10).

Mr. Jenkins's renewed argument rests on but-for causation, however, the relevant question is not whether Officer Martinsky's alleged false statement was the but-for cause, but whether the standard of reasonable suspicion was met. *See United States v. Hensley, 469 U.S. 221, 229 (1985)* ("if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony" then a stop can be made). Agent Weber's investigation of Mr. Jenkins's social media after communicating with Officer Martinsky revealed a prominent neck tattoo, articles of clothing, and an outward appearance identical to the robber. (ECF 33 at 3). Determining that Mr. Jenkins held characteristics of the likely robber, Agent Weber directly communicated his investigatory findings to Indiana state troopers. (*Id.*) Consequently, Trooper Glaze received FBI briefing on Mr. Jenkins prior to the stop,

where he was shown pictures of Mr. Jenkins, learned that he was considered a suspect, and where he was believed to be residing. (*Id*. at 11). Additionally, he was informed that the FBI was "applying for a search warrant of the apartment" and heard a radio call stating that Mr. Jenkins was traveling on Cleveland Road. (*Id*.); *see United States v. Walden, 146 F.3d 487, 491 (7th Cir. 1998)* (finding that an officer's knowledge of a defendant's criminal record in conjunction with other information forms the basis of reasonable suspicion). The totality of circumstances that allowed Trooper Glaze to obtain particularized and articulable facts from the FBI directly, support a finding that he had reasonable suspicion to initiate the stop. Regardless of the reliability of Officer Martinsky's statement, it does not affect whether Trooper Glaze had reasonable suspicion based on communication with FBI.

Even if Trooper Glaze did not have reasonable suspicion, he observed Ms. Greer commit three traffic violations. (ECF 33 at 4-5). Thus, he had probable cause to order a traffic stop. *See United States v. Simon*, 937 F.3d 820, 828 (7th Cir. 2019) ("the decision to stop a car is reasonable, and comports with the Fourth Amendment, "where the police have probable cause to believe that a traffic violation has occurred.") (*citing Whren v. United States*, 517 U.S. 806, 810 (1996)). During the dog sniff that followed the traffic stop, Trooper Caswell was alerted that there were drugs in the vehicle. (ECF 33 at 4); *see United States v. Simon*, F.3d 820, 833 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 824 (2020) ("A dog's alert on a car can give probable cause to search the entire car"). Ms. Greer also consented to the search. (ECF 33 at 5). During the search, the troopers located Ms. Walton's purse, which was near a baggie with marijuana residue. (*Id*. at 9). Because there could have been

drugs inside the purse, the troopers were justified in searching its contents and retrieving the disputed bait bill. *See United States v. Melgar*, 227 F.3d 1038, 1042 (7th Cir. 2000) (holding that an officer may search a purse when a suspect gives them consent to commence a residential search). Also, the Air Jordan sneakers Mr. Jenkins wore matched the description of one of the robbers, thereby becoming relevant evidence. (*Id.*); *see* Fed.R. Evid. 401. Thus, the evidence obtained during the traffic stop was the result of Indiana state troopers' own probable cause, not due to the search warrant that contained Officer Martinsky's identifying statement. Therefore, the evidence was properly used in the prosecution's case. *See Segura v. United States*, 468 U.S. 796, 815 (1984) ("evidence will not be excluded as 'fruit' unless the illegality is at least the "but for" cause of the discovery of the evidence.").[3]

By submitting a Motion to Suppress the evidence challenging the legality of the traffic stop, Mr. Schmid performed his duties reasonably without prejudice. *Strickland*, 466 U.S. 687, 692. Expecting Mr. Schmid or Mr. Wemhoff to file an additional motion to suppress the evidence when the original motion was denied would be frivolous. Therefore, Mr. Jenkins's Fourth Amendment rights were not violated and the Court "presume[s]" that Mr. Jenkins's counsel acted reasonably. *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016).

---

[3] Although Mr. Jenkins refers to the fruit of the poisonous tree doctrine, it does not apply because Trooper Glaze had probable cause to initiate the traffic stop. *See Jones v. Brown*, No. 4:19-cv-00233-TWP-DML, 2020 WL 5106569 (S.D. Ind. August 31, 2020) ("the fruit of the poisonous tree doctrine [does] not apply [when] it was a legal, permissible search.").

### C.    Non-testimony of Officer Martinsky

Moreover, the Court construes Mr. Jenkins's last claim as a failure to call a witness for him to confront.[4] (ECF 142 at 27). In support, he contends that Mr. Wemhoff, "advised [him] that he would not subpoena or cross-examine Martinsky at trial because if he bring[s] up Defendant['s] criminal record it would make him look bad." (*Id*.). Mr. Jenkins alleges that Mr. Wemhoff's inaction deprived him of the ability to confront the witnesses against him. (*Id*.). But Mr. Wemhoff had a legitimate reason for declining to call Officer Martinsky. *See Jones v. Calloway*, 842 F.3d 454, 464 (7th Cir. 2016) (establishing that an attorney's failure to present a material exculpatory witness can be supported by a trial strategy explanation). Mr. Wemhoff explicitly stated that calling Officer Martinsky to the stand to undermine his credibility would devastate their case because it would permit the government to attack Mr. Jenkins's lengthy criminal history. (ECF 142 at 27); *see United States v. Cavender*, 228 F.3d 792, 798 (7th Cir. 2000) (holding that a defendant is not entitled to a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."). Also, Mr. Jenkins does not plausibly plead that but-for Officer Martinsky not being called to the stand, the case would be decided differently. *See Lee,* 106 F.4th at 673. Accordingly, the Court finds that trial counsel's implementation and exercise of a trial strategy did not prejudice Mr. Jenkins. *See Strickland*, 466 U.S. at 692.

---

[4] Mr. Jenkins argues that this was done in violation of the Sixth Amendment Confrontation Clause. However, there cannot be a Confrontation Clause claim against a criminal defense attorney, as it is only reserved for actions committed by the Court or government. *See United States v. Vitrano*, 747 F.3d 922, 924 (7th Cir. 2014) (finding that the Confrontation Clause is reserved for testimonial evidence introduced by the prosecution).

## CONCLUSION

For these reasons, Mr. Jenkins' Motion is **DENIED**. (ECF 142). Mr. Jenkins' Motion

for Bond (ECF 148) and Motion for Writ of Habeas Corpus ad Prosequendum (ECF 149)

are **DENIED** as moot.

SO ORDERED on June 5, 2026.

_/s/_*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT